# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 23-1233V

|  |  |
|---|---|
| SANTOSH JOSHI,<br><br>　　　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: August 21, 2025 |

*Renee Ja Gentry, The Law Office of Renee J. Gentry, Washington, DC,* for Petitioner.

*Camille Jordan Webster, U.S. Department of Justice, Washington, DC,* for Respondent.

### **FACT RULING ON ONSET**[1]

On July 19, 2023, Santosh Joshi filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that he suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of a tetanus-diphtheria-acellular pertussis ("Tdap") vaccine administered to him on June 13, 2022. Pet. at 1, ECF No. 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, I find it more likely than not that the onset of Petitioner's shoulder pain occurred within 48 hours of vaccination, as alleged.

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

## I. Relevant Procedural History

Following Respondent's medical review of the claim, the parties attempted to informally resolve this matter but were unsuccessful. ECF Nos. 18-26. Respondent thereafter filed his Rule 4(c) Report in November 2024, arguing that Petitioner had failed to show a Table injury because his medical records did not establish onset for a Table SIRVA. Respondent's Report at 7, ECF No. 27. The onset dispute is now ripe for consideration.

## II. Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, 2005 WL 6117475, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014). The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### III.  Relevant Factual Evidence

I make this finding after a complete review of the record to include all medical records, affidavits, and additional evidence filed, and in particular the following:[3]

- Petitioner received the subject Tdap vaccine on June 13, 2022, at his place of employment. Ex. 1 at 8.

- In his affidavit, Petitioner attests that he "felt immediate pain and soreness at the site of administration" of his June 13, 2022 vaccination. Ex. 11 ¶ 4. He continued, the "pain persisted throughout the next day (June 14, 2022)[,]" and by June 15, 2022, he "experienced a sudden dramatic worsening of the pain" and began taking Advil. *Id.* Petitioner explained that he put off seeking medical care because he "thought of it as a normal side effect" and he was in the process of moving. *Id.* ¶ 7. By the time of his move (on July 1, 2022), "day-to-day simple tasks . . . became very difficult[;]" he thus called for an orthopedic appointment on July 2, 2022, and took the first available visit. *Id.* ¶¶ 8-9.

- One month and 14 days post vaccination (on July 27, 2022), Petitioner sought care with an orthopedic surgeon. Ex. 2 at 8. Petitioner reported "left shoulder pain for the past 6 weeks" that "started after a tetanus booster shot in the left shoulder." *Id.* Petitioner described difficulties reaching and with

---

[3] While I have reviewed all the evidence filed to-date in this case, only evidence related to onset will be discussed herein, though other facts may be provided as necessary.

3

- overhead activities, sleeping, and that he had attempted to relieve his symptoms with Advil. *Id.*

- On August 10, 2022, Petitioner had an initial physical therapy ("PT") evaluation for his left shoulder pain. Ex. 3 at 48. He stated he was "unsure when this condition started" but "said: '[c]ondition started last mid June [sic].'" *Id.* Petitioner also "mention[ed] that it all started when he had a tetanus vaccine" and his pain had become progressively worse. *Id.*

- A year later, on August 10, 2023, Petitioner began another round of PT and reported "pain in left shoulder since June of 2022 after a tetanus injection." Ex. 16 at 9-10. The date of onset was listed as "6/1/2022." *See id.*

- On April 5, 2024, Petitioner started yet another round of PT. Ex. 22 at 1. He reported that his left shoulder symptoms had been present "since June of 2022 after a tetanus injection." *Id.* The date of onset was listed as "June 2022." *Id.*

- No other medical record or affidavit evidence regarding the onset of Petitioner's post vaccination shoulder injury has been filed.

## IV. Finding of Fact Regarding Onset

A petitioner alleging a SIRVA claim must show that he experienced the first symptom or onset within 48 hours of vaccination (42 C.F.R. § 100.3(a)(XIV)(B)), and that his pain began within that same 48-hour period (42 C.F.R. § 100.3(c)(10)(ii) (QAI criteria)). As noted, Respondent contends that Petitioner's medical records are "unclear as to the onset of" his left shoulder symptoms, and thus do not support that the onset of his pain occurred within 48 hours of vaccination. Respondent's Report at 7-8.

The totality of the evidence favors Petitioner's onset contentions. The aforementioned medical records, coupled with Petitioner's affidavit, establish that Petitioner consistently reported to treaters onset close-in-time to vaccination, that he sought treatment within one-and-a-half months of the vaccination, and that he indeed was experiencing symptoms in the relevant timeframe. *See,* e.g., Ex. 2 at 8-10; Ex. 3 at 48; Ex. 11 ¶¶ 4-9.

The fact that Petitioner delayed treatment a bit (seeking care within less than two months of his vaccination (on July 27, 2022)) actually supports a finding of Table-consistent onset here. In other cases, even *greater* delays has not undermined an otherwise-preponderantly-established onset showing consistent with the Table. *See,* e.g.,

*Tenneson v. Sec'y of Health & Hum. Servs.*, No. 16-1664V, 2018 WL 3083140, at *5 (Fed. Cl. Spec. Mstr. Mar. 30, 2018), *mot. for rev. denied,* 142 Fed. Cl. 329 (2019) (finding a 48-hour onset of shoulder pain despite a nearly six-month delay in seeking treatment); *Williams v. Sec'y of Health & Hum. Servs.*, No. 17-830V, 2019 WL 1040410, at *9 (Fed. Cl. Spec. Mstr. Jan. 31, 2019) (noting a delay in seeking treatment for five-and-a-half months because a petitioner underestimated the severity of her shoulder injury). The delay here is not nearly as long.

Delay in seeking treatment itself also is not *per se* evidence of a non-conforming onset. As I have previously noted, SIRVA petitioners often put off seeking shoulder-related care based on the reasonable assumption that the pain is normal and will resolve on its own over time, especially since patients are often told by medical providers at the time of vaccination to expect some soreness and pain. This appears to have been (at least partially) the case here, with Petitioner explaining that he "thought of it as a normal side effect" of vaccination and thus tried unsuccessfully to treat his pain with over-the-counter remedies while he dealt with moving homes. *See,* e.g., Ex. 11 ¶ 7. And the fact that Petitioner did not attend any intervening visits between vaccination and his first visit for left shoulder pain further supports the conclusion that his pain began close-in-time to vaccination.

In addition, although the filed medical record bearing on onset is fairly limited in this case, Petitioner affirmatively and repeatedly linked his shoulder pain to the Tdap vaccine – beginning with the July 27th treatment encounter, at which time he noted that he had "left shoulder pain for the past 6 weeks" that "started after a tetanus booster shot." Ex. 2 at 8. This reporting provides further support for Table onset. One other subsequent medical record also corroborates the contention made in Petitioner's affidavit that his pain began within 48 hours of vaccination. Ex. 3 at 48 (an August 10, 2022 note that his condition began "last mid June [sic] . . . when he had a tetanus vaccine").

Although some of Petitioner's records suggest an onset beginning at some unspecified time in June 2022, I do not find this evidence tips against a favorable onset determination. *See,* e.g., Ex. 16 at 9-10; Ex. 22 at 1. In fact, Petitioner still reported his pain as beginning in June 2022 after his receipt of the Tdap vaccine in question. *See id.* These records are thus consistent with his other reports of pain beginning after his subject vaccination and provide further support for 48-hour onset. Petitioner has thus established that onset of his injury occurred within the timeframe required by the Table.

## Conclusion

Petitioner has provided preponderant evidence that the onset of his shoulder pain occurred within 48 hours of vaccination.

I thus encourage the parties to make a final re-attempt at settlement. **Respondent shall file, by no later than <u>Monday, October 06, 2025</u>**, a status report concerning how he intends to proceed, including, if appropriate, whether he would like to file an amended Rule 4(c) Report or whether he is otherwise willing to entertain a renewed settlement demand from Petitioner.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master